`

## IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | | |
|---|---|---|
| **Ronald Monique Best,** | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **1:22cv266 (LMB/JFA)** |
| | ) | |
| **Harold W. Clarke,** | ) | |
| **Respondent.** | ) | |

### MEMORANDUM OPINION

Ronald Monique Best ("petitioner" or "Best"), a Virginia inmate proceeding pro se, has filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his July 29, 2019 convictions in the Circuit Court of the City of Norfolk, Virginia for voluntary manslaughter and unlawfully shooting at an occupied building. The respondent has filed a Rule 5 Answer and a Motion to Dismiss with supporting briefs and exhibits. [Dkt. Nos. 14-16]. Petitioner was advised of his opportunity to file responsive materials pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), and Local Rule 7(K), and he filed an opposition to the motion to dismiss. [Dkt. No. 19]. Accordingly, this matter is ripe for disposition. For the reasons that follow, respondent's Motion to Dismiss will be granted and the petition will be dismissed with prejudice.

### I. Procedural History and Background

On September 6, 2017, petitioner was indicted for second-degree murder in violation of Virginia Code § 18.2-32; maliciously discharging a firearm into an occupied building in violation of Virginia Code § 18.2-279; and use of a firearm in the commission of a felony in violation of Virginia Code § 18.2-53.1. These charges arose from the June 18, 2017 death of Samantha Ganther. (Case Nos. CR17-1999-00, CR17-1999-01). On April 5, 2019, after a six-day trial, a jury convicted petitioner of the lesser-included offenses of voluntary manslaughter and

unlawfully shooting at an occupied building, and acquitted him of using a firearm while committing or attempting to commit murder.  On June 28, 2019, in accordance with the jury's recommendation, the circuit court sentenced Best to ten years in prison for voluntary manslaughter and five years in prison for unlawfully discharging a firearm into an occupied building. The judgment order imposing the fifteen-year sentence was entered on July 29, 2019.

Petitioner, who was represented by his trial counsel on appeal, appealed his convictions to the Court of Appeals of Virginia (Record No. 1203-19-1), asserting that the trial court erred in three respects: 1) by not setting aside his convictions because the testimony of his co-defendant, Ulysses Butler, was inherently incredible; 2) by depriving him of a fair trial due to the jury's failure to follow the court's instructions and then failing to hold a hearing regarding the jury's conduct; and 3) by not granting a mistrial due to improper argument by the prosecutor. (CAV R. at 24, 79-87). A judge of the Court of Appeals of Virginia denied the petition in a per curiam order entered on May 28, 2020, and a three-judge panel adopted the reasoning of the May 28, 2020 order when it denied Best's petition for appeal on October 15, 2020.

Best, by counsel, filed a petition for appeal in the Supreme Court of Virginia on November 11, 2020, raising the same assertions of error. (Record No. 201388) (VSCT I at 9). The Supreme Court of Virginia refused his petition for appeal on September 20, 2021 (VSCT I at 66) and denied his petition for rehearing on November 22, 2021. (VSCT I at 84).

While his petition for direct appeal was pending in the Supreme Court of Virginia, Best filed a pro se petition for a writ of habeas corpus in the Supreme Court of Virginia on March 26, 2021. (Record No. 210308) (VSCT II). Best's petition to the Supreme Court of Virginia raised two claims, which the court summarized as follows:

>    (1)     [P]etitioner contends he was denied the effective assistance of counsel when
>            counsel told the jury during his opening statement that petitioner did not

2

shoot the victim and was innocent of any crime, but later argued the jury should be instructed on self-defense. Petitioner asserts a claim that he did not shoot the victim was incompatible with a claim of self-defense, which he contends required that he admit intentionally killing the victim. Petitioner appears to assert counsel should have argued a theory of self-defense from the beginning instead of after the conclusion of the Commonwealth's case-in-chief.... [P]etitioner contends he was denied the effective assistance of counsel because counsel, knowing petitioner 'would assert his innocence, [] allowed [petitioner] to testify and essentially eliminate his claim of self-defense" and that petitioner "was denied the effective assistance of counsel because counsel argued in support of his request for a self-defense instruction that the jury could find petitioner was not credible and that Butler was credible and thus find that petitioner acted in self-defense." (VSCT II at 3984, 3987, 3988).

(2)    [P]etitioner contends he was denied the effective assistance of counsel because counsel attempted to concede petitioner shot Ganther during the motion to strike the evidence" and "when counsel conceded during closing arguments to the jury that petitioner shot Ganther, in violation of <u>McCoy</u>.

(<u>Id.</u> at 3889-90).

In its denial of the petition on December 2, 2021, the Supreme Court of Virginia summarized the record as follows:

Samantha Ganther, petitioner's cousin, and Ulysses Butler, her fiancé, were hosting a cookout with Ricco Jones and his girlfriend when petitioner, petitioner's brother Quintay Best, and petitioner's friend, Christopher Cotton, arrived at Ganther's home. Butler testified he did not get along with petitioner and their relationship was strained. According to Butler, Cotton, and Jones, petitioner was disruptive at the cookout and repeatedly insulted Butler. Cotton and Jones asked petitioner to leave and escorted petitioner back to his car. However, petitioner refused to leave, volleying between getting in his car and leaving his car to insult Butler. Butler went inside the house and came out with gun, firing repeatedly at petitioner and [Quintay] as they sat in petitioner's car. Butler went back inside. Jones testified that, shortly after Butler went inside, he saw petitioner emerge from his car and fire a gun at the side door of the house. Ganther was found lying against the side door inside the house with a visible gunshot wound to the head. She died at the scene. Butler testified he shot at petitioner because petitioner had threatened him. He further testified he felt "scared" and "nervous" because he believed petitioner carried a gun. Butler acknowledged he initially told police that Cotton had a gun, but did not say petitioner had a gun. He explained he was referring to when Cotton and Best first arrived at the house, and he could see Cotton's gun under his shirt. He clarified he did not see Cotton shoot or otherwise remove his gun from under his shirt.

3

Patrick Riddick, a neighbor living across the street from Butler and Ganther, testified he heard multiple gunshots and stepped outside on his front porch. He saw Butler pointing a gun at two men at the street corner. He stated one of the men had blood on his face and was holding a gun, but the other man did not have a gun.

Cotton testified he was on the phone in the front yard when he heard the first set of gunshots. He stated he fled on foot after hearing the gunshots. He further testified petitioner caught up with him, with blood on his face and a gun in his hand, and attempted to hand Cotton the gun. Cotton refused to take the gun, and petitioner threw it into some bushes. Cotton later directed police to the discarded gun. Cotton admitted he had been carrying a gun in a holster at the time of the shooting and that he gave it to his girlfriend before returning to the scene.

Cotton's girlfriend subsequently turned the gun over to police, and later testing showed it was not the gun that killed Ganther.

Petitioner returned to the scene and was taken into custody. Forensic analysis revealed the bullet that killed Ganther was fired from the handgun that had been discarded in the bushes. Further, forensic testing revealed that petitioner could not be eliminated as a contributor to the DNA profile developed from blood found on the baseplate of the magazine inside the handgun.

At the conclusion of the Commonwealth's case, counsel moved to strike the evidence, first arguing the "uncontradicted evidence" showed that, at most, petitioner "talked a lot of trash" to Butler. Counsel further argued that even if the Commonwealth's evidence was accepted in its entirety, Butler was clearly the aggressor, and the evidence should be stricken on the basis of self-defense. Counsel then argued, in the alternative, that the Commonwealth's evidence, at best, proved petitioner acted in the heat of passion after reasonable provocation. The trial court denied the motion. [Quintay] Best and petitioner both testified petitioner did not have a gun and did not fire a gun. Petitioner further testified Cotton had a gun and shot at Butler.

Following the close of evidence, counsel renewed the motion to strike, and emphasized that the defense's argument to the jury would be that petitioner did not shoot anybody. The court denied the motion, and counsel then requested instructions for self-defense, voluntary manslaughter, and involuntary manslaughter. Counsel acknowledged petitioner had not claimed he acted in self-defense, but contended the jury could nonetheless find he did so based on the evidence adduced at trial. The trial court denied the self-defense instruction and granted the instructions for voluntary manslaughter and involuntary manslaughter.

In closing argument, counsel argued the Commonwealth had not proved beyond a reasonable doubt that petitioner had a gun or fired it at the house. Counsel argued petitioner's actions were inconsistent with someone who fired into the house, that Butler's testimony was inherently incredible, and that the jury should not credit the Commonwealth's other witnesses for various reasons. Counsel further argued the forensic evidence did not support petitioner's culpability. Counsel argued the gun in the bushes belonged to Cotton, and petitioner's blood dripped on it as they ran from the scene.

4

> Throughout the trial, counsel consistently argued petitioner's innocence to the jury, and counsel never argued to the jury that petitioner acted in self-defense. Counsel's argument to the court for the self-defense instruction was premised on the jury believing particular portions of the Commonwealth's evidence and was not inconsistent with counsel's own presentation of a defense of complete innocence.

(VSCT II at 3984-86).

On March 10, 2022, petitioner timely filed the present habeas corpus petition. Because he did not use the form required under Local Civil Rule 83.4, he was directed to comply with the rule. On April 11, 2022, petitioner filed an amended petition that raises a single claim:

> The Petitioner relies: on Claim #2) of (record No. 210308) Ineffective Assistance of Counsel. The Petitioner submits that he is suffering a continued violation of his rights to Due Process of Law, and Autonomy, as guaranteed by the Fifth, Fourteenth, and Sixth Amendments to the Federal Constitution of the United States. The facts supporting these claims are more fully developed in the accompanying Memorandum in Support of Petition.

[Dkt. No. 5] at 5.[1] The sole issue presented in Best's memorandum is his assertion that his trial counsel's closing argument violated his "Sixth Amendment right to Autonomy" as recognized by the United States Supreme Court in McCoy v. Louisiana, 138 S. Ct. 1500, 1509 (2018) when counsel said the following:

> [t]here is plenty of reasonable doubt, and the hope is that justice will be done fairly and correctly and that this man who has this horrible burden on his shoulder of having killed the cousin he loved, will be exonerated because they haven't proven this case beyond a reasonable doubt.

[Dkt. No. 5] at 17, ¶ 2. Best argues that, contrary to his clear desire to maintain his innocence, his counsel "asked the jury to find [him] not guilty, not because he was innocent, but because [petitioner] killed his cousin, and they didn't prove it." Id. As a result, Best claims that his

---

[1] Petitioner states this claim twice in his petition as both Ground 1 and Ground 2. [Dkt. No. 5 at 5, 7].

counsel's statement was a structural error that is "not subject to harmless error analysis." [Dkt. No. 5] at 19.

Respondent concedes that Best has satisfied the procedural requirement of exhausting his claim in the state courts. [Dkt. No. 16] at 17.

## II. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), "a federal court may not grant a state prisoner's habeas petition unless the relevant state-court decision 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" Knowles v. Mirzayance, 556 U.S. 111, 121 (2009). The "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 571 U.S. 12, 20 (2013).

An unreasonable application of federal law is not the same as an incorrect application. "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007); accord Renico v. Lett, 559 U.S. 766, 772-73 (2010). "Even 'clear error' will not suffice." White v. Woodall, 572 U.S. 415, 419 (2014) (citing Lockyer v. Andrade, 538 U.S. 63, 75–76 (2003)).

This "highly deferential standard ... demands that state court decisions be given the benefit of the doubt." Renico, 559 U.S. at 773 (internal quotations and citations omitted). "The required deference encompasses both the state court's legal conclusions and its factual findings." Lenz v. Washington, 444 F.3d 295, 299 (4th Cir. 2006). "[A] determination on a factual issue made by a State court shall be presumed correct." Tucker v. Ozmint, 350 F.3d 433, 439 (4th Cir. 2003) (quoting 28 U.S.C. § 2254(e)(1)). "In reviewing a habeas petition, federal courts must

presume the correctness of a state court's factual determinations unless the habeas petitioner

rebuts the presumption of correctness by clear and convincing evidence." Green v. Johnson, 515

F.3d 290, 299 (4th Cir. 2008); see Schriro, 550 U.S. at 473-74. Section 2254(d)(1), as amended

by the AEDPA, requires an "examination of the state-court decision at the time it was made. It

follows that the record under review is limited to the record in existence at that same time—*i.e.*,

the state court record." Cullen v. Pinholster, 563 U.S. 170, 182 (2011).

      Claims of ineffective assistance of counsel are determined based on the highly

demanding standard set forth in Strickland v. Washington, 466 U.S. 668 (1984). Under

Strickland, the petitioner has the burden to show both that his attorney's performance was

deficient and that he was prejudiced as a result. See Strickland, 466 U.S. at 687.

      When an ineffective assistance of counsel claim is evaluated under the § 2254(d)(1)

standard of review, a "doubly deferential judicial review" applies. Knowles, 556 U.S. at 123; see

also Woods v. Etherton, 136 S. Ct. 1149, 1151 (2016).  This doubly deferential review requires

federal courts on habeas review to give the benefit of the doubt to the state courts and to defense

counsel. Woods, 136 S. Ct. at 1151. "Section 2254(d) codifies the view that habeas corpus is 'a

guard against extreme malfunctions in the state criminal justice systems,' not a substitute for

ordinary error correction through appeal." Valentino v. Clarke, 972 F.3d 560, 581 (4th Cir. 2020)

(quoting Harrington, 562 U.S. at 102-03) (additional citation omitted).

      Strickland's first prong, the "performance" inquiry, "requires showing that counsel made

errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by

the Sixth Amendment." Strickland, 466 U.S. at 687. A federal court reviewing a habeas petition

indulges a "strong presumption" that counsel's conduct fell within the "wide range of reasonable

professional assistance." Id. at 689. The "basic lesson" of Strickland is that "judicial scrutiny" of

counsel's performance must be "highly deferential." United States v. Mason, 774 F.3d 824, 828 (4th Cir. 2014) (citation omitted). Attorneys "are permitted to set priorities, determine trial strategy, and press those claims with the greatest chances of success." Id.

Strickland's second prong, the "prejudice" inquiry, requires showing that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." Id. "The likelihood of a different result must be substantial, not just conceivable." Valentino, 972 F.3d at 580 (quoting Harrington, 562 U.S. at 86); accord Shinn v. Kayer, 141 S. Ct. 517, 523 (2020). In a federal habeas review, the question is whether the state court, "notwithstanding its substantial 'latitude to reasonably determine that a defendant has not [shown prejudice],' still managed to blunder so badly that every fairminded jurist would disagree." Mays v. Hines, 141 S. Ct. 1145, 1149 (2021) (substitution in the original) (quoting Knowles, 556 U.S. at 123).

Petitioner asserts that his claim should be evaluated under McCoy v. Louisiana, 138 S. Ct. 1500 (2018), rather than Strickland and that therefore he is not required to show prejudice. [Dkt. No. 19] at 3.  In McCoy, the defendant's trial counsel disregarded his client's clear instruction to pursue an acquittal and, instead, conceded his client's guilt in the liability phase of a capital trial in an effort to avoid the death penalty. 138 S. Ct. at 1506.  The trial court denied the defendant's motion for a new trial and the state supreme court affirmed, holding that counsel had authority to concede the defendant's guilt despite the client's desire to assert his innocence. Id. at 1507.   In reviewing the defendant's direct appeal, the Supreme Court held that the "[a]utonomy to decide that the objective of the defense is to assert innocence" is a decision that is "reserved for the client," and is not a strategic decision that can be made by the attorney.  Id. at

8

1508.  Because the "client's autonomy, not counsel's competence, is in issue," the Supreme

Court held that the trial court's error was "structural" and that the Strickland test did not apply to

McCoy's appeal. 138 S. Ct. at 1510.  The "[v]iolation of a defendant's Sixth Amendment-

secured autonomy ranks as error of the kind our decisions have called 'structural'; when present,

such an error is not subject to harmless-error review." Id. at 1511.  Neither the Supreme Court

nor the Fourth Circuit has considered how a federal court should consider a habeas claim based

on alleged violation of the autonomy rights recognized in McCoy.

### III. Discussion

Whether this Court considers petitioner's claim under the deferential Strickland habeas

standard or the analysis defined in McCoy, his claim has no merit.

Best alleges that trial counsel conceded his guilt to the jury when, towards the end of his

closing argument, he stated that the jury should acquit Best because "[t]here is plenty of

reasonable doubt, and the hope is that justice will be done fairly and correctly and that this man

who has this horrible burden on his shoulder of having killed the cousin he loved, will be

exonerated because they haven't proven this case beyond a reasonable doubt." [Dkt. No. 5] at 5.

In reviewing Best's state habeas petition, the Supreme Court of Virginia declined to apply

McCoy, finding that Best's counsel simply "misspoke" during his closing argument.  Petitioner

argues that the Supreme Court of Virginia's conclusion that trial counsel simply misspoke and

that it was not "reasonably likely" that the jury interpreted his statement as conceding

petitioner's guilt was unreasonable. [Dkt. No. 5] at 18-19.

The state habeas court's conclusion that McCoy did not apply to Best's petition was not

contrary to, or an unreasonable application of, United States Supreme Court precedent, and its

factual findings also were not unreasonable "in light of the evidence presented in the State court

9

proceeding." 28 U.S.C. § 2254(d)(2).  Contrary to petitioner's assertion that the holding of

McCoy supports his petition, the factual record here is very different from the facts of McCoy,

which included clear evidence of the defendant's trial counsel repeatedly disregarding his

client's explicit desire to maintain his innocence. 138 S. Ct. at 1506-1507.  In contrast, the record

of petitioner's trial shows that "[t]hroughout the trial, counsel consistently argued petitioner's

innocence to the jury[.]" (VSCT II at 3986).  Indeed, Best's trial counsel had recommended that

Best pursue a claim of self-defense, but petitioner rejected that advice and his counsel abided by

his decision. The state habeas court observed that petitioner "did not wish to admit he shot

Ganther or to pursue a claim of self-defense at trial, and he told counsel this and counsel

'ultimately agreed' to pursue a defense compatible with petitioner's wishes." (VSCT II at 3987).[4]

        In his opening statement at trial, counsel described Best as wrongly accused, stating that

he was unarmed at the time that Ganther was shot and that the evidence would show that the

shooter was not Best.  (VSCT II at 1002, 1005, 1015-16).  Best's counsel also stated in his

opening that Best was looking forward to the trial so that "he can proclaim his innocence . . . and

have this terrible burden lifted off his shoulders, an accusation that somehow he killed the cousin

he loved when, in fact, it's Mr. Butler, the evidence will show, who caused the whole thing."

(Id. at 1006).  Best testified at trial that he did not have a firearm during the events, that he did

not fire a gun, and that Cotton fired a gun at Butler.  (Id. at 3986).  In his 85-minute closing

argument, Best's trial counsel thoroughly reviewed the evidence in the light most favorable to

his client and asked the jury to exonerate Best.

_____

[4] Indeed, defense counsel made great efforts to persuade the trial judge to include a self-defense
jury instruction without compromising Best's position that he did not shoot Butler. Trial counsel
argued, outside the hearing of the jury, that although Best maintained that he did not fire the gun,
the jury might believe the evidence presented by the prosecution and conclude that he acted in
self-defense. (VSCT II at 3986).

10

The Supreme Court of Virginia did not act unreasonably when it rejected petitioner's claim that a single phrase in his defense counsel's closing argument created a structural error under McCoy.  It was not unreasonable for the court to conclude that, given the context of the entire 85-minute closing argument, trial counsel "simply misspoke." (VSCT II at 3990).  The Supreme Court of Virginia supported its conclusion by noting the record established that "counsel argued vigorously and extensively for 85 minutes that the evidence did not prove beyond a reasonable doubt that petitioner committed the offenses or that he possessed or fired a gun." (Id. at 3989).  It also found that counsel emphasized specific evidence at trial, including favorable testimony and the lack of forensic evidence that petitioner fired a gun, attacked Butler's credibility, and even provided an alternative theory. (Id. 3989-90).  The Supreme Court of Virginia also recognized that Best's counsel ended the statement on which Best's petition is based by urging the jury to exonerate petitioner, which undermines Best's claim that counsel conceded his guilt. (Id. at 2797). The statement closely mirrored Best's counsel's statement at the outset of the trial that Best wished to have "this terrible burden lifted off his shoulders, an accusation that somehow he killed the cousin he loved," further supporting the state court's conclusion that he merely misspoke in his closing.  (Id. at 1006) (emphasis added).  Finally, throughout the trial, petitioner's counsel abided by Best's objective to maintain that he did not fire the gun, and counsel's closing argument must be considered within that context.  Other than the single phrase during closing argument, petitioner has offered no evidence that his counsel disregarded his instructions and has not even provided a theory of why his counsel would "concede his guilt" at the conclusion of the trial. For all these reasons, it was not unreasonable for the Supreme Court of Virginia to conclude that counsel made a "simple misstatement" and did not violate petitioner's right under McCoy to determine the objective of his defense.

11

Having reasonably found that petitioner's claim does not establish a structural error under McCoy, the Supreme Court of Virginia then considered petitioner's claim under Strickland and, without deciding that counsel's performance was deficient,[5] concluded that the petitioner failed to establish prejudice:

> [P]etitioner contends he was denied the effective assistance of counsel when counsel conceded during closing arguments to the jury that petitioner shot Ganther, in violation of McCoy. Petitioner asserts counsel conceded his guilt when counsel stated toward the end of his closing argument, "[t]here is plenty of reasonable doubt, and the hope is justice will be done fairly and correctly and that this man who has this horrible burden on his shoulder of having killed the cousin he loved, will be exonerated because they haven't proven that."
>
> The Court holds this portion of claim (2) fails to satisfy the prejudice prong of the two-part test enunciated in Strickland. When reviewed in its totality, counsel did not concede petitioner's guilt during his closing argument to the jury. Instead, counsel argued vigorously and extensively for 85 minutes that the evidence did not prove beyond a reasonable doubt that petitioner committed the offenses or that he possessed or fired a gun. Counsel emphasized Butler's testimony as inherently incredible; the other Commonwealth witnesses' inconsistencies in their testimonies and their biases; and the lack of forensic evidence that petitioner fired a gun. Counsel even provided an alternative theory that Cotton owned the gun, and he discarded it in the bushes as he fled from the scene. In conclusion, counsel told the jury that "[h]ope grows in a courtroom .... Hope that the ladies and gentlemen of the jury in this great country will see that the Commonwealth has not proven this case by any stretch beyond a reasonable doubt against [petitioner], that Mr. Butler alone has lied so much, told so many different stories that we can't rely upon anything he says." Continuing, counsel urged the jury that "[t]here is plenty of reasonable doubt, and the hope is that justice will be done fairly and correctly and that this man who has this horrible burden on his shoulder of having killed the cousin he loved, will be exonerated because they haven't proven that." Counsel then reiterated that the Commonwealth failed to prove petitioner's guilt beyond a reasonable doubt and asked the jury to acquit him. Given the context of

---

[5] Had the state habeas court considered the first prong of the Strickland test, it reasonably could have found that trial counsel's performance was not deficient. The United States Supreme Court has explained that "[c]losing arguments should sharpen and clarify the issues for resolution by the trier of fact, but which issues to sharpen and how best to clarify them are questions with many reasonable answers." Yarborough v. Gentry, 540 U.S. 1, 5–6 (2003) (citation and quotation marks omitted). "[C]ounsel has wide latitude in deciding how best to represent a client, and deference to counsel's tactical decisions in his closing presentation is particularly important because of the broad range of legitimate defense strategy at that stage." Id.  Accordingly, "[j]udicial review of a defense attorney's summation is ... highly deferential." Id.

the entire closing argument, it appears that counsel simply misspoke and did not mean to concede in the final moments of his closing argument that petitioner shot Ganther, nor is it reasonably likely that the jury so construed his arguments. Thus, petitioner has failed to demonstrate that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

(Id. at 3989-90). This conclusion was not unreasonable.

Best's only argument is that because counsel's statement was made during closing argument it "was the last argument presented by the defense . . . and sealed Best's fate 'because a jury would almost certainly be swayed by a lawyer's concession of his client's guilt.'" [Dkt. No. 5] at 17 (citing McCoy, 138 S. Ct. at 1511). The timing of counsel's statement alone is not sufficient to overcome the "dual and overlapping' lenses of deference, which we apply simultaneously rather than sequentially." Crockett, 35 F.4th at 242. (quoting Owens v. Stirling, 967 F.3d 396, 411 (4th Cir. 2020)). "This double-deference standard effectively cabins our review to a determination of 'whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.'" Morva v. Zook, 821 F.3d 517, 528 (4th Cir. 2016). The Supreme Court of Virginia's dismissal of Best's state habeas petition clearly satisfies this standard. Moreover, defense counsel's misstatement was not the final argument heard by the jury. After defense counsel's closing argument, the jury heard the state's rebuttal argument, which provided a detailed response to the defense's closing argument. Significantly, the prosecutor's rebuttal focused on the testimony and physical evidence and did not acknowledge any "concession" of guilt, suggesting that the prosecutor did not understand defense counsel's misstatement as a concession of petitioner's guilt. (VSCT II at 2798-2816).

The Supreme Court of Virginia thoroughly considered the trial record and evaluated petitioner's claim in light of his counsel's efforts throughout the trial and in the context of the entire closing argument. The state court's conclusion that Best failed to establish a reasonable probability that the outcome of his trial would have been different without counsel's single

13

misstatement during closing argument was not unreasonable.  As the state court explained, trial counsel's closing argument focused on impeaching Butler and the other witnesses using their inconsistent statements and motivation for testifying, arguing that the physical evidence did not contradict petitioner's claim of innocence, and persuading the jury to credit petitioner's testimony.  In light of trial counsel's summation of the evidence and express argument that the Commonwealth failed to establish that petitioner fired any shots at Butler, the Supreme Court of Virginia reasonably concluded that it was not "reasonably likely that the jury so construed [counsel's] arguments" as conceding petitioner's guilt in the final moments of the trial and, therefore, petitioner failed to demonstrate that there was a reasonable probability that the result of the trial would have been different, but for his counsel's misstatement. (Id. at 3889-90).

The state habeas court's determination is well supported by the trial record and petitioner has offered no evidence to the contrary.  Accordingly, the state court's conclusion that Best failed to establish a reasonable probability that the outcome of his trial would have been different but for this single misstatement from trial counsel is not unreasonable and is entitled to deference.

## IV. Conclusion

For the foregoing reasons, respondent's Motion to Dismiss [Dkt. No. 13] will be granted. An appropriate Order and judgment shall issue.

Entered this ⟋⟋⟋ day of February 2023.

Alexandria, Virginia

/s/

Leonie M. Brinkema
United States District Judge

14